**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DEF TRADING, LLC,**

**Plaintiff,**

**v.**

**FLORIDA BANCSHARES, INC. and FIRST NATIONAL BANK OF PASCO, *et al*.**

**Defendants.**
______________________________/

CASE NO.: **8:25-cv-02996-SDM-CPT**

**<u>DEFENDANTS' MOTION TO DISMISS</u>**

Defendants, FLORIDA BANCSHARES, INC. ("Bancshares"), FIRST NATIONAL BANK OF PASCO ("FNB Pasco") (collectively, Bancshares and FNB Pasco are referred to as the "Bank Defendants"), and nominal Defendants ANDER PLATT GIBBS ("Gibbs"), JOHN HENSON ("HENSON"), PAUL MIDILI ("MIDILI"), ERNEST PEEPLES ("PEEPLES"), MARLENE MANN ("MANN"), STEVEN CARLE ("CARLE"), and PAULA S. O'NEIL ("O'NEIL") (collectively referred to the "Director Defendants" and together with Bank Defendants, are collectively referred as the "Defendants"), by and through their undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure, move to dismiss Plaintiff's Verified Complaint [D.E. 1] and in support thereof, states as follows:

## INTRODUCTION

This case is pleaded as a shareholder derivative action, yet Plaintiff admits it made no pre-suit demand and seeks to proceed on a generalized "futility" theory coupled with a speculative "irreparable injury" assertion tied to alleged OCC deadlines. [D.E 1, Verified Compl. ¶ 73]. Rule 23.1 requires a derivative plaintiff to plead, with particularity, any effort to obtain board action and, if none was made, the reasons for not making the effort. Fed. R. Civ. P. 23.1(b)(3). Florida law supplies the substantive demand rules because Bancshares is a Florida corporation, and Florida's derivative statute likewise requires that the verified complaint allege, **with particularity**, the demand (if any) and the reasons demand was not made (or the other statutory predicates). Fla. Stat. § 607.0742(1)–(2). Plaintiff's demand allegations, resting on the fact that the directors are named defendants and a prediction "upon information and belief" that deadlines will be missed, do not satisfy those heightened requirements, and dismissal is warranted at the threshold. District courts of this State enforce that particularity burden in the demand-futility context and reject conclusory pleading as insufficient. See, e.g., *Long v. Odland*, 2012 WL 13019034, at *7–8 (S.D. Fla. Aug. 15, 2012).

Independently, each count fails under Rule 12(b)(6). Count I relies on conclusions (e.g., "willful," "grossly negligent," "self-interested") rather than director-specific facts plausibly establishing an actionable fiduciary breach and causation. [D.E 1, Verified Compl. ¶¶ 77–81]. Count II seeks a declaration that a bylaw provision is "unenforceable, null and void," but it does so in a posture that is derivative in form

and non-justiciable in substance because it seeks a preemptive ruling to facilitate an anticipated governance contest rather than to resolve a ripe dispute. [D.E 1, Verified Compl. ¶ 100]. Count III pleads injunctive relief as a standalone "claim" and demands mandatory relief in the form of an order "compel[ling] compliance with all regulations governing the Bank" and leadership replacement. [D.E 1, Verified Compl. ¶ 106]. The Verified Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

Plaintiff DEF Trading, LLC ("DEF") alleges it bought 108,900 shares of Florida Bancshares, Inc. ("Bancshares") in December 2024 (under 10%). [D.E 1, Verified Compl. ¶¶ 70-71]. Bancshares allegedly wholly owns FNB Pasco, and DEF sues directors of the Bank Defendants. [D.E 1, Verified Compl. ¶¶ 3-12].

DEF alleges that, against a backdrop of federal illegality of marijuana and heightened compliance expectations for cannabis-related banking, the Bank's Board decided in or about 2022 to pursue cannabis-related banking and ACH processing through agreements referenced in the Complaint, despite allegedly lacking adequate personnel, protocols, and expertise for the associated regulatory requirements. [D.E 1, Verified Compl. ¶¶ 14-22]. DEF alleges the OCC began investigating around 2024, required a costly "lookback," and ultimately found unsafe or unsound practices and BSA/AML deficiencies, while the Bank cycled through leadership and selected Paula S. O'Neil as President/CEO. [D.E 1, Verified Compl. ¶¶ 23-26, 28-31].

DEF alleges the Bank entered an OCC Operating Agreement on September 11, 2025 (announced/published October 16, 2025) requiring significant governance and

compliance actions, including a compliance committee within 60 days and a written oversight program within 90 days addressing leadership qualifications and risk oversight, and that DEF's requests for information and proposed candidates were refused while the Board intended to keep O'Neil. [D.E 1, Verified Compl. ¶¶ 32-41]. DEF also alleges that after it began preparing a consent solicitation to replace directors/management, the Board amended bylaws on August 21, 2025 to eliminate shareholder action by written consent via "NO ACTION WITHOUT A MEETING" and to increase thresholds and notice requirements for shareholder-called meetings, after DEF had expended resources preparing the solicitation. [D.E 1, Verified Compl. ¶¶ 52-56, 60-63, 86-90, 95-96].

Finally, DEF alleges corporate harm from litigation/compliance costs and diminished value, and admits it made no demand, claiming demand is excused as futile because directors are defendants and because the Bank allegedly faces strict OCC deadlines as soon as November 10, 2025 and December 10, 2025; DEF also alleges it was "stonewalled" when raising concerns. [D.E 1, Verified Compl. ¶¶ 64-68, 73-74].

## MEMORANDUM OF LAW

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556

U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). This plausibility requirement "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. In turn, "only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id*. (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)). "To meet this 'plausibility standard,' a plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*.

Derivative actions are subject to heightened pleading requirements. Rule 23.1 requires a derivative plaintiff to "state with particularity" any effort to obtain the desired action from the directors (or comparable authority) and, if no effort was made, "the reasons for not making the effort." Fed. R. Civ. P. 23.1(b)(3). Rule 23.1 is procedural; the substance of the demand requirement is governed by the law of the state of incorporation. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96–99 (1991); see also *Stepak v. Addison*, 20 F.3d 398, 402–05 (11th Cir. 1994) (enforcing Rule 23.1 particularity and applying state-law demand rules); *McCabe v. Foley*, 424 F. Supp. 2d 1315, 1319 (M.D. Fla. 2006) (same).

Florida's derivative statute requires that a shareholder derivative complaint be verified and allege, with particularity, the demand (if any) and one of the statutory predicates, including "the reason or reasons the shareholder did not make the effort to obtain the desired action from the board of directors or comparable authority." Fla. Stat. § 607.0742(1)–(2)(c). Thus, even if a plaintiff relies on "futility" as its asserted "reason," the statute still requires particularized factual allegations sufficient for the

Court to evaluate whether the board could consider and act on the demand consistent with its authority and duties. Courts applying Rule 23.1 likewise require "stringent requirements of factual particularity" in demand-futility pleadings and reject conclusory allegations as insufficient. *Long*, 2012 WL 13019034, at *7–8.

## ARGUMENT

### I. Plaintiff Fails to Plead Demand Futility with the Particularity Required under Rule 23.1 and Fla. Stat. § 607.0742

Plaintiff admits it made no pre-suit demand and asserts demand was "not required" because (i) demand would be futile since every current board member is named as a defendant and (ii) the corporation will suffer "material and irreparable injury" if Plaintiff must comply with the statute's waiting period because the Bank allegedly faces "significant compliance deadlines" under an OCC Operating Agreement and, "upon information and belief," "will not meet those deadlines." [D.E 1, Verified Compl. ¶¶ 73]. That paragraph is not a particularized demand-futility pleading, but a conclusory statement. Rule 23.1 requires that a derivative plaintiff plead with particularity either the effort to obtain board action or the reasons for not making that effort, and Florida's derivative statute likewise requires a verified complaint to allege, with particularity, either the demand and its outcome or the particularized reasons demand was not made. Fed. R. Civ. P. 23.1(b)(3); Fla. Stat. § 607.0742(1)–(2)(c).

In *Long v. Odland*, the court dismissed where the plaintiff attempted to excuse demand on "futility" grounds but offered generalized allegations rather than concrete

facts showing why a majority of the board could not evaluate a demand, emphasizing that Rule 23.1 pleadings must comply with "stringent requirements of factual particularity" and that a complaint "larded with conclusory language" does not satisfy derivative pleading mandates. 2012 WL 13019034, at *7–8. *Long* further illustrates the type of particularity required by rejecting futility allegations that did not identify board composition facts the court deemed "essential" to evaluating whether a majority of the board lacked independence, and by holding that generalized assertions about compensation or self-interest are insufficient to establish futility. Id. at *8; see also *Story v. Kang*, No. 8:04-cv-1587-T-23TBM, 2006 WL 163078, at *2–3 (M.D. Fla. Jan. 20, 2006) (requiring particularized facts showing the board is so influenced as to deprive it of discretion).

Plaintiff's pleading here contains the same defects: it offers a categorical assertion that demand is futile because directors are defendants, without director-specific facts showing a disabling lack of independence or disinterestedness as to a majority of the board, and it adds only a speculative "information and belief" prediction that OCC deadlines will be missed, without particularized facts showing why a prompt demand could not be made, why the board could not act in response, and why the demand process itself would cause the claimed harm. [D.E 1, Verified Compl. ¶ 73]. Because Plaintiff admits it made no demand and fails to plead demand futility (or any statutory excuse) with the required particularity, the derivative action fails at the threshold and all counts, each of which incorporates the derivative allegations, should be dismissed. [D.E 1, Verified Compl. ¶¶ 77, 82, 101].

## II. Count I (Breach of Fiduciary Duty) Fails Independently Under Rule 12(b)(6)

Even if the Court reached the merits, Count I does not plausibly plead an actionable fiduciary breach. Plaintiff alleges that each director owes fiduciary duties and "breached those duties by performing the actions detailed" elsewhere, and then concludes the actions were "willful," "grossly negligent," and self-interested. [D.E 1, Verified Compl. ¶¶ 78-80]. Those are labels, not director-specific facts. Under *Twombly* and *Iqbal*, Plaintiff must plead factual content that makes a fiduciary-breach claim plausible as to each defendant, including what each director did or failed to do, how that conduct was outside the protection of business judgment principles, and how the alleged conduct proximately caused cognizable damages. *Twombly*, 550 U.S. at 555–57; *Iqbal*, 556 U.S. at 678–79. Plaintiff's reliance on generalized "unqualified leadership" and asserted compliance risk does not supply the missing factual detail required to state a plausible claim against each individual director.

## III. Count II (Declaratory Judgment) Fails Because It Seeks an Advisory Opinion and Does not Present a Ripe "Actual Controversy"

Count II asks the Court to declare that the bylaw provision requiring shareholder action to occur at a meeting is "unenforceable, null and void," and to declare that "Plaintiff may remove any Director Defendant by written consent" notwithstanding that provision. [D.E 1, Verified Compl. ¶ 100]. Those are not requests to resolve a completed corporate dispute, but are requests for a judicial ruling to shape a prospective contest for corporate control. Plaintiff's own factual allegations confirm

the contingent, forward-looking posture: Plaintiff alleges it was "preparing a consent solicitation" and had incurred costs before the challenged bylaw amendments were adopted. [D.E 1, Verified Compl. ¶¶ 89, 95-97]. On those allegations, the requested declaration would not redress a concrete denial of an actual corporate action (e.g., a completed written-consent action that was presented and rejected), but instead would instead provide preemptive guidance about how a future consent campaign might operate. Federal courts lack jurisdiction to issue advisory opinions, and declaratory relief is appropriate only where there is a real and immediate controversy of sufficient "immediacy and reality." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985). The Eleventh Circuit has repeatedly held that a declaratory-judgment claim is non-justiciable where the alleged dispute is conjectural, contingent, or premised on a chain of future events that may not occur. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347–48 (11th Cir. 1999).

Count II also fails on pleading coherence and procedural posture. Plaintiff has pleaded this entire lawsuit as derivative under Rule 23.1 and Florida's derivative statute and incorporates the derivative allegations into Count II, including the admission that no demand was made and the asserted "futility" narrative. [D.E 1, Verified Compl. ¶¶ 69-76, 73, 82]. If Count II is truly derivative, it falls with the demand defect for the reasons stated above. If Plaintiff attempts to recharacterize Count II as "direct" on the theory that it involves voting rights, the Complaint still does not plead a ripe direct controversy, because Plaintiff alleges only preparation for a solicitation and does not

allege that it actually effectuated a written-consent removal and was denied effect, nor does it plead the necessary elements of a direct claim distinct from the derivative framework it invoked. Either way, dismissal of Count II is warranted.

**IV. Count III (Injunctive Relief) Is Improper and Should Be Dismissed**

Count III pleads "Preliminary and Permanent Injunctive Relief" as a separate count and asks for sweeping mandatory orders, including an order "enjoining Defendants from violating the OCC Regulations," an order "compel[ling] compliance with all regulations governing the Bank," and orders compelling leadership and board replacement (including removal of the CEO/President and replacement of directors with "qualified" directors). [D.E 1, Verified Compl. ¶ 106]. As a threshold matter, the Eleventh Circuit has explained that a "traditional injunction is a remedy," not a standalone cause of action. *Klay v. United Health group, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004). A plaintiff must first plead a viable substantive claim, and only then does equitable relief become available as a potential remedy. *Id*. The District Courts of this State have followed this precedent consistently. See *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019, 2018 WL 3730875, at *7 (S.D. Fla. June 11, 2018) (noting that "there are an abundance of cases establishing that injunctive relief 'is a remedy, not a separate cause of action'"); *Pierson v. Orlando Regional Healthcare Systems, Inc.*, 619 F. Supp. 2d 1260, 1288-89 (M.D. Fla. 2009). Because the Complaint fails at the derivative-demand stage and fails to state a plausible underlying claim, Count III cannot stand. See *Equitrac Crop. v. Delaney*, No. 09-60629-CIV, 2009 WL 10667046, at *6 (S.D. Fla. Aug.

31, 2009) (dismissing count seeking injunctive relief for failure to state a claim as a prayer for relief without an accompanying cause of action).

**CONCLUSION**

Plaintiff admits it made no pre-suit demand and does not plead demand futility with the particularity required by Rule 23.1 and Fla. Stat. § 607.0742. (Verified Compl. ¶ 73.) The Court should dismiss the Verified Complaint in its entirety. Fed. R. Civ. P. 23.1(b)(3); Fla. Stat. § 607.0742; *Long v. Odland*, 2012 WL 13019034, at *7–8. Independently, Counts I–III each fail under Rule 12(b)(6) for the reasons stated above, including lack of a ripe actual controversy for declaratory relief and the improper standalone pleading and extraordinary nature of the requested mandatory injunction.

**LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to M.D. Fla. Local Rule 3.01(g), the undersigned counsel certifies that, prior to filing this Motion, he made good faith efforts to confer with Plaintiff's counsel by email. The parties were unable to resolve this issue in good faith, and thus the necessity to file this motion.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of December, 2025, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

COLE, SCOTT & KISSANE, P.A.

*Counsel for Defendants*
*FLORIDA BANCSHARES, INC.,*
*FIRST NATIONAL BANK OF PASCO.*
*ANDER PLATT GIBBS, JOHN HENSON,*
*PAUL MIDILI, ERNEST PEEPLES,*
*MARLENE MANN, STEVEN CARLE, AND*
*PAULA S. O'NEIL*
500 N. Westshore Boulevard, Suite 700
Tampa, Florida 33609
Telephone 813-560-2810
Facsimile 813-286-2900 Primary
e-mail:
daniel.nicholas@csklegal.com
Secondary e-mail:
andres.martinez@csklegal.com
Alternative e-mail:
roxanne.cohen@csklegal.com

By: *_/s/ Daniel A. Nicholas_*
DANIEL A. NICHOLAS
Florida Bar No.: 0847755
ANDRES J. MARTINEZ
Florida Bar No.: 1049428