# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**DEF TRADING, LLC,**

      **Plaintiff,**

**v.**

**FLORIDA BANCSHARES,
INC. and FIRST NATIONAL
BANK OF PASCO,** *et al.*

      **Defendants.**

_____/

CASE NO.: **8:25-cv-02996-SDM-CPT**

## <u>DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S VERFIED MOTION FOR PRELIMINARY INJUNCTION</u>

Defendants, FLORIDA BANCSHARES, INC. ("Bancshares"), FIRST NATIONAL BANK OF PASCO ("FNB Pasco") (collectively, Bancshares and FNB Pasco are referred to as the "Bank Defendants"), and nominal Defendants ANDER PLATT GIBBS ("Gibbs"), JOHN HENSON ("HENSON"), PAUL MIDILI ("MIDILI"), ERNEST PEEPLES ("PEEPLES"), MARLENE MANN ("MANN"), STEVEN CARLE ("CARLE"), and PAULA S. O'NEIL ("O'NEIL") (collectively referred to the "Director Defendants" and together with Bank Defendants, are collectively referred as the "Defendants"), by and through their undersigned counsel and pursuant to

the applicable Federal Rules of Civil Procedure, hereby respond in opposition to Plaintiff's Verified Motion for Preliminary Injunction (Dkt.30) (the "Motion for Preliminary Injunction"). Designated evidence in opposition includes "eight" declarations being filed herein (Exhibit Nos. 1-8). This includes one declaration of the Bank Defendants (Ex. No. 1) and seven declarations by each Director Defendant (Ex. Nos. 2-7). The Defendants also filed OCC Operating Agreement between the Bank Defendants and the United Stares Office of the Comptroller of the Currency for which the Bank Defendants are subject to strict, ongoing regulatory compliance (Exhibit No. 9).[1] Lastly, the Defendants are filing "draft" board minutes of board meeting held on January 15, 2026, finding that maintenance of the subject derivative action was not in best interest of corporation.[2] This board determination of lawsuit not being in best interest, which is pursuant to Florida Statutes Section 607.0744, is also reflected in the declarations filed herein (Ex. Nos 1-8, ¶ 7).

## **INTRODUCTION**

---

[1] The OCC Operating Agreement is also filed with the Motion for Preliminary Injunction (Ex. No.1)

[2] The minutes will be finalized at next board meeting on February 19, 2026, and filed with the Court as supplemental evidence in opposition to the Motion for Preliminary Injunction.

Plaintiff seeks extraordinary, mandatory injunctive relief requiring this Court to intervene in the governance of a federally regulated national bank and effectively "supervise" the Bank Defendants compliance with an Office of the Comptroller of the Currency ("OCC") Operating Agreement. The Motion attempts to convert this ongoing federal supervisory process, and an incomplete shareholder solicitation effort, into a judicially manufactured corporate emergency to interfere with OCC Operating Agreement. In other words, and in terms of simplicity, Plaintiff requesting the Court to interfere with OCC Operating Agreement to advance Plaintiff's personal interest and baseless removal of directors, which requires OCC approval in the first instance. Plaintiff does not join OCC in this action but seeking injunctive relief affecting the OCC.

Federal law bars private injunctive enforcement of OCC supervisory agreements. Florida corporate law independently forecloses Plaintiff's derivative and fiduciary claims because qualified and independent directors determined, in good faith and after reasonable inquiry, that maintenance of this litigation is not in the Bank's best interests. Florida's business judgment rule further insulates the Board's conduct from judicial second-guessing. All

is verified in Defendants supporting declarations filed herein (Exhibit Nos. 1-8)

Most fundamentally, Plaintiff failed to obtain the written shareholder consents necessary to effect the governance changes it seeks, and for this reason, and rather conspicuously, has not and cannot file such non-existent written consents with the court in support of the Motion for Preliminary injunction. As confirmed in supporting declarations by the Director Defendants (Ex. No. 1, ¶ 6) and the Bank Defendants (¶ Ex. No. 2-8,¶ 6) , Plaintiff did "not" secure "any" executed written consents to remove or replace directors, and because no lawful shareholder action occurred, Plaintiff cannot establish a likelihood of success on the merits.

Because Plaintiff cannot establish a "substantial likelihood of success on the merits", as again verified in the supporting Declarations (¶ 12),   the Motion for Preliminary Injunction must be denied.

## **MEMORANDUM OF LAW**

A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). In the Eleventh Circuit, a movant must clearly establish: (1) a

substantial likelihood of success on the merits; (2) irreparable injury unless the injunction issues; (3) that the threatened injury outweighs the harm to the opposing party; and (4) that the injunction would not disserve the public interest. *See, e.g., Haitian Refugee Center, Inc. v. Nelson, 872 F.2d 1555, 1561* (11th Cir. 1989*); JPMorgan Chase Bank, N.A. v. Ben-Ezra & Katz, P.A., 2011 WL 1458066, 1* (S.D. Fla. 2011).

The likelihood of success on the merits prong requires plaintiffs to demonstrate that success is probable, not merely possible. *Winter*, 555 U.S. 7 (2008). The irreparable harm requirement demands that plaintiffs demonstrate harm that is both likely to occur and cannot be adequately compensated by monetary damages. As established in *Winter*, irreparable harm must be "likely" rather than merely "possible." *Id*. Federal courts have further refined this standard to require that irreparable harm must be imminent, not remote or speculative, and that where monetary damages cannot compensate for the injury, the harm is irreparable. *Connor v. New York State Com'n on Judicial Conduct*, 260 F.Supp.2d 517 (2003).

## ARGUMENT

### I. Plaintiff Cannot Establish a "Substantial Likelihood of Succes on the Merits"

As verified in Defendants Declarations (Exhibit Nos. 1-8), Plaintiff's claims fail for four independent reasons: (A) federal preemption; (B) statutory dismissal under Fla. Stat. § 607.0744; (C) the business judgment rule presumption; and (D) failure to obtain the shareholder "written consents" necessary to effect the governance change DEF seeks without required OCC approval.

### A. Federal Law Bars Judicial Enforcement of OCC Operating Agreements

Plaintiff's request for injunctive relief is fundamentally incompatible with the federal statutory framework governing national banks. Congress has established a comprehensive supervisory and enforcement regime under the National Bank Act and 12 U.S.C. § 1818 that centralizes regulatory authority in the OCC and restricts judicial interference with that authority.

Section 1818(b) authorizes the OCC to issue cease-and-desist orders and enforce written agreements entered into with national banks. Critically, § 1818(i)(1) provides:

"Except as otherwise provided in this section… no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section."

This language is jurisdictional and unequivocal. It bars courts from issuing injunctions that would "affect" the enforcement or supervision of OCC regulatory instruments.

The former Fifth Circuit recognized that § 1818 reflects "a clear intention that this regulatory process is not to be disturbed by untimely judicial intervention." *Groos Nat'l Bank v. Comptroller of Currency*, 573 F.2d 889, 895 (5th Cir. 1978). Congress created a detailed administrative enforcement mechanism and withdrew district court authority to interfere with it.

Plaintiff's Motion seeks to compel compliance with the OCC Operating Agreement to which it is not in privity and then impose governance-related relief designed to satisfy federal supervisory concerns. That request would require this Court to evaluate the Bank's compliance posture, effectively supervise remedial measures, and potentially alter regulatory timing and approval processes that is fully vested with the OCC. Such judicial intervention would "affect" enforcement within the meaning of § 1818(i).

The record, including Declarations (Ex Nos. 1-8), OCC Operating Agreement (Ex. No. 9) and Board Minutes (Exhibit No. 10) confirm that the OCC remains actively engaged with the Bank and that validation of compliance efforts is anticipated during the mid-year 2026 examination cycle. This is an "ongoing" federal supervisory process and judicial intrusion at this stage would directly interfere with that supervisory process for which the Bank Defendants are in full compliance as set forth in the Defendants Declaration (Exhibit Nos. 1-8, ¶¶ 4 ,5 , 8), as the Bank dutifully performs the OCC Operating Agreement and the Plaintiff presents no scintilla of evidence of non-compliance in the Motion for Preliminary Injunction.  Even assuming arguendo, the Bank was not in compliance with OCC Operating Agreement, which it is not, this is a federal matter as  between the Bank and the OCC  pursuant to the OCC Operating Agreement.

Moreover, the Operating Agreement (Article V) requires OCC approval "before" appointment of senior executive officers and directors, including any directors proposed by Plaintiff ( Ex Nos. 1-8, ¶6). Thus, Plaintiff's requested relief in the Motion for Preliminary Injunction collides directly with supervisory conditions subject to exclusive OCC approval as required

by OCC Operating Agreement, which Plaintiff wholly ignores in the Motion for Preliminary Injunction in pretextual effort to obtain relief.

Federal courts consistently reject attempts by private litigants to enforce or compel compliance with federal banking consent orders or operating agreements. Such instruments do not create privately enforceable rights. Allowing Plaintiff to obtain injunctive relief would undermine Congress's centralized enforcement scheme and invite judicial micromanagement of federally supervised institutions.

Because federal law precludes the relief Plaintiff seeks, Plaintiff cannot establish a viable underlying cause of action and therefore cannot demonstrate a substantial likelihood of success on the merits.

### B. The Board's § 607.0744 Determination Was Made by Qualified and Independent Directors Acting in Good Faith After Reasonable Inquiry

Florida Statute § 607.0744 permits dismissal of a derivative proceeding "if" qualified directors determine, in good faith and after reasonable inquiry, that maintenance of the action is not in the corporation's best interests. The corporation bears the burden of proving independence, good faith, and reasonable investigation and has done so in Declarations (Ex. Nos. 1-8, ¶ 7)

.

On January 15, 2026, as set forth in Defendant Declarations (Ex. Nos. 1-8, ¶ 7) and board minutes (Ex. No. 10) after months of review, and consultation with counsel, the Board unanimously determined in good faith that maintenance of this derivative action is not in the Bank's best interests. The undisputed record further reflects ongoing regulatory engagement, OCC communications, and the potential operational impact of continued litigation. *Id.* The Board Directors declared under oath that this determination was made after reasonable inquiry and in good faith. Ex. No-1-8 (¶7).

Plaintiff may argue that because certain directors are named defendants, they cannot qualify as independent under § 607.0744. That argument fails.

Florida law does not impose a per se rule that directors named as defendants are disqualified. If mere status as a defendant destroyed independence, § 607.0744 would be meaningless in nearly every derivative case. The proper inquiry is whether directors face a disabling conflict, typically shown through particularized allegations of self-dealing, improper personal benefit, fraud, or a substantial likelihood of personal liability.

*Rappaport v. Scherr*, 322 So. 3d 138 (Fla. 4th DCA 2021). Plaintiff alleges none of those and offers no evidence to the contrary.

The claims concern regulatory compliance and business oversight, not self-dealing or personal enrichment. Regulatory scrutiny does not create a disabling financial interest. Participation in challenged decisions does not automatically eliminate independence. *See Atkins v. Topp Telecom, Inc.*, 874 So. 2d 626, 631 (Fla. 4th DCA 2004). Unlike cases involving demonstrable conflicts, such as where the decision-maker was also a principal creditor and defendant, there is no evidence here of personal financial interest or improper motive. See *De Moya v. Fernandez*, 559 So. 2d 644 (Fla. 4th DCA 1990).

Declarations (Ex. Nos 1-8)  and Board Minutes (Ex. No. 10) reflect substantive engagement with OCC representatives, including acknowledgment of significant compliance progress and no new examination concerns pursuant to OCC Operating Agreement (Ex. No. 9). The Board Directors further declared that no director  acted "fraudulently, oppressively, illegally, or in bad faith", and are "qualified" [Exhibit Nos. 1-8, ¶¶ 9, 10, 11). Under *Atkins*, this Court's review is limited to whether the directors were qualified, independent, acted in good faith, and conducted a

reasonable inquiry—not whether the Court would reach the same conclusion. Plaintiff cannot overcome § 607.0744, and that alone defeats likelihood of success.

### C. Plaintiff Cannot Overcome the Business Judgment Rule Presumption

Florida's business judgment rule is codified at Fla. Stat. § 607.0831 and establishes a strong presumption that directors act in good faith, on an informed basis, and in a manner, they reasonably believe to be in the best interests of the corporation. The presumption may be overcome only by particularized allegations of fraud, self-dealing, improper personal benefit, bad faith, or intentional misconduct. Courts will not substitute their judgment for that of directors based merely on disagreement with corporate strategy or hindsight criticism of business outcomes.

Plaintiff contends that the Bank's regulatory posture and the existence of an OCC Operating Agreement demonstrate conscious disregard or willful misconduct. [Pl.'s Mot. at pg. 20]. That argument improperly conflates regulatory oversight with fiduciary breach. National banks routinely enter into supervisory agreements as part of regulatory processes. The existence of an OCC Operating Agreement does not establish fraud or bad faith.

The contemporaneous record demonstrates active oversight and engagement, rather than disregard, and clear satisfaction of business judgment rule (Exhibit No. 1-8, ¶¶9-11). The record also shows that no director acted "fraudulently, oppressively, illegally, or in bad faith", and are "qualified" [Exhibit Nos. 1-8, ¶¶ 9, 10, 11). This is paradigm of proper business judgment . January 15, 2026, Board Minutes (Ex. No. 10) further reflect discussion of OCC examination findings, acknowledgment of significant progress, and evaluation of compliance timelines. Plaintiff identifies no particularized facts demonstrating intentional misconduct, personal enrichment, much less breach of OCC Operating Agreement.

Plaintiff's assertion that directors acted to preserve compensation is likewise insufficient. Ordinary director compensation does not constitute a disabling personal benefit. Plaintiff alleges no insider transactions, no diversion of assets, and no concealed financial interests. Plaintiff's reliance on *Disorbo v. American Van Lines, Inc.*, 354 So. 3d 530 (Fla. 4th DCA 2023), and *Bancor Group Inc. v. Rodriguez*, 2023 WL 4972881 (S.D. Fla. July 5, 2023), is misplaced. Those cases involved evidentiary records suggesting directors acted for personal benefit. Here, there is no such evidence, only conclusory allegations.

The decisions Plaintiff challenges (i.e., regulatory response, compliance strategy, governance structure, and capital management) are core board functions protected by the business judgment rule. Absent particularized allegations of fraud or disabling conflict, the presumption of good faith applies. Plaintiff therefore cannot establish a likelihood of success on its fiduciary claims.

### D. Plaintiff Cannot Establish a Likelihood of Success Because It Failed to Obtain the Shareholder Written Consents Necessary to Effect Governance Change

Plaintiff's Motion is premised in substantial part on the assertion that governance changes are necessary and that the current Board lacks support; yet Plaintiff concedes it merely "began the process" of seeking written consents from shareholders. That effort failed.

As confirmed by the Board Directors, Plaintiff did not actually obtain any written shareholder consents via consent solicitation to remove directors or affect the governance changes it seeks. [Ex. Nos 1-8, ¶ 6].

Under Florida law, shareholders may act by written consent in lieu of a meeting only if the requisite number of shares execute written consents sufficient to authorize the action. *See Fla. Stat. § 607.0704*. Until such consents

are obtained and delivered in accordance with statutory requirements, no corporate action occurs.

Plaintiff did "not" secure executed written consents sufficient to remove or replace directors. It did not effectuate a valid shareholder action. The current Board therefore remains the duly elected and authorized governing body.

Courts do not grant mandatory injunctions to accomplish indirectly what a party failed to accomplish through lawful corporate procedures. If Plaintiff's governance concerns were widely shared, the statutory consent mechanism provided the proper avenue for change. Plaintiff's inability to obtain sufficient shareholder support materially undermines its claim of entitlement to relief.

Because no valid shareholder action occurred, Plaintiff cannot demonstrate a likelihood of success on any claim premised on board illegitimacy or corporate control.

## II.    Plaintiff Cannot Establish Irreparable Harm

Plaintiff's irreparable harm argument rests on speculation and economic concerns, neither of which satisfies *Winter*. Plaintiff must show

that irreparable injury is likely, not merely possible, in the absence of an injunction. It has not done so.

Plaintiff asserts that the Bank faces escalating regulatory consequences, including potential removal actions or severe OCC enforcement, but the contemporaneous record contradicts any claim of imminent crisis. The January 15, 2026, Board Minutes and Declarations reflect that OCC representatives reported "no new concerns" from the October 2025 examination and acknowledged significant compliance progress, with validation anticipated during the mid-year 2026 examination cycle. There is no evidence of a pending removal proceeding by OCC, no initiated enforcement escalation, and no threatened charter action. Pure speculation about possible future regulatory steps does not constitute irreparable harm.

Plaintiff's alleged shareholder harm of shareholder diminution is likewise insufficient. Economic injury, like the one alleged by Plaintiff, is compensable through monetary damages and therefore not irreparable under *Winter*. Plaintiff identifies no imminent asset dissipation, no irreversible transaction, and no non-compensable loss.

The Bank is operating within an active federal supervisory framework. The OCC retains exclusive authority to assess compliance and impose corrective measures. Judicial intrusion into that process is neither necessary nor appropriate to prevent harm.

Because Plaintiff's asserted injuries are speculative or economic, and not imminent and irreparable, the Motion must be denied on this independent ground.

## III.   Public Interest Weighs Against Injunction

Under *Winter*, courts must consider whether an injunction would serve the public interest. 555 U.S. at 24. Here, it would not.

Plaintiff seeks judicial intervention in the governance of a federally regulated national bank during an active OCC supervisory process. Congress has vested exclusive supervisory authority over national banks in federal regulators, not district courts. Judicial interference with that framework risks undermining uniform national banking regulation and disrupting an ongoing compliance process already overseen by the OCC.

The public, not DEF, has a strong interest in regulatory stability, deference to federal banking authorities, and continuity in the governance of financial institutions. Granting a mandatory injunction to alter corporate

governance, particularly where Plaintiff failed to obtain sufficient written shareholder consents, would substitute judicial authority for both shareholder procedures and federal supervision vested in the OCC.

Because the requested relief would intrude upon federally assigned regulatory authority and destabilize an actively supervised institution, the public interest weighs decisively against issuance of a preliminary injunction.

## IV. Any Injunction Would Require a Hearing on Security Under Rule 65(c), with the OCC Present

If the Court were to grant any preliminary relief, Rule 65(c) requires security. Given the regulatory posture of a national bank operating under an OCC Operating Agreement, any bond determination implicates federal supervisory considerations. In that event, Defendants would respectfully request that the Court conduct an evidentiary hearing to determine the required security and provide notice and an opportunity to be heard to the OCC as the regulatory authority of the Bank Defendants, who are subject to the OCC Operating Agreement.

## **CONCLUSION**

Plaintiff seeks extraordinary, mandatory relief that would displace a duly constituted board, intrude upon an active federal supervisory process, interfere with OCC Operating Agreement, and accomplish through judicial order what it failed to accomplish through lawful shareholder procedures. The law does not permit such relief.

Under *Winter*, Plaintiff must establish a likelihood of success on the merits, a likelihood of irreparable harm, favorable equities, and alignment with the public interest. Plaintiff satisfies none of these requirements.

Federal law precludes private enforcement of OCC supervisory agreements. Independent and qualified directors determined in good faith, after reasonable inquiry, that maintenance of this litigation is not in the Bank's best interests. The business judgment rule presumption remains unrebutted. Plaintiff failed to secure the written shareholder consents necessary to effect governance change. And its alleged harms are speculative and economic, not imminent and irreparable.

This case presents neither fraud nor asset diversion nor institutional collapse. It presents a disagreement over regulatory strategy and board

composition—matters addressed through corporate governance mechanisms and federal oversight, not emergency judicial intervention.

For these reasons, the Motion for Preliminary Injunction should be denied. In the alternative, should the Court grant injunctive relief despite pending OCC oversight, Defendants respectfully request a Rule 65(c) evidentiary hearing with notice to the OCC for ultimate determination of amount of bond, which should not be nominal.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of Febuarary, 2026, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

COLE, SCOTT & KISSANE, P.A.

*Counsel for Defendants*
*FLORIDA BANCSHARES, INC.,*
*FIRST NATIONAL BANK OF PASCO.*
*ANDER PLATT GIBBS, JOHN HENSON,*
*PAUL MIDILI, ERNEST PEEPLES,*
*MARLENE MANN,  STEVEN CARLE,*
*AND PAULA S. O'NEIL*
500 N. Westshore Boulevard, Suite 700
Tampa, Florida 33609
Telephone 813-560-2810
Facsimile 813-286-2900

Primary e-mail:
daniel.nicholas@csklegal.com
Secondary e-mail:
andres.martinez@csklegal.com
Alternative e-mail:
roxanne.cohen@csklegal.com

By:  */s/ Daniel A. Nicholas*
DANIEL A. NICHOLAS
Florida Bar No.: 0847755
ANDRES J. MARTINEZ
Florida Bar No.: 1049428