# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

## Case No. 8:25-cv-02996-SDM-CPT

DEF TRADING, LLC,

Plaintiff,

v.

FLORIDA BANCSHARES, INC. and
FIRST NATIONAL BANK OF PASCO
as nominal defendants and ANDER
PLATT GIBBS, JOHN HENSON,
PAUL MIDILI, ERNEST PEEPLES,
MARLENE MANN, STEVEN
CARLE, AND PAULA S. O'NEIL,

Defendants.

_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendants, Florida Bancshares, Inc., First National Bank of Pasco (collectively the "Bank") Ander Platt Gibbs, John Henson, Paul Midili, Ernest Peeples, Marlene Mann, Steven Carle and Paula S. O'Neil (collectively the "Board Members") (Collectively the Bank and Board Members are referred to as the "Defendants"), by and though their undersigned counsel, pursuant to Federal Rules of Civil Procedure 27(a)(3), hereby responds in opposition to Plaintiff's

Motion to Compel, the ("Motion") (Dkt. 39), and as grounds therefore state as follows:

## I.     **BACKGROUND**:

This case involves a derivative lawsuit against the Bank and its Board in an attempt to reveal the private governance by the Office of the Comptroller of the Currency (the "OCC") of the highly federally regulated national Bank and intervene in regulatory processes that cannot be disturbed by judicial intervention as a matter of federal preemption law and as set forth in Dkt. 47. On or about January 12, 2026, Plaintiff served its First Request for Production on Bank and Board Defendants. On January 23, 2026, Defendants served their responses and objections to Plaintiff's Request for Production, producing hundreds of responsive documents shortly thereafter. At this juncture, the remaining discovery issue is Plaintiff's sweeping Request for Production No. 5., which seeks the following from Defendants:

All documents and communications concerning Your efforts to comply with the OCC Operating Agreement including but not limited to:

(a) Your efforts to appoint a Compliance Committee as required by the OCC Operating Agreement, Article II (1);

(b) Submission of written progress reports by the Compliance Committee to the Board as required by the OCC Operating Agreement, Article II (2);

(c) Your efforts to adopt a written Board Oversight and Corporate Governance Program as required by the OCC Operating Agreement, Article III (1) and (2), and copies and/or current drafts of the Board Oversight and Corporate Governance Program;

(d) Your efforts to draft and submit a Strategic Plan for the Bank as required by the OCC Operating Agreement, Article IV (1), and copies and/or current drafts of the Strategic Plan;

(e) Your efforts to implement and adhere to the Strategic Plan;

(f) Submissions to the ADC of strategic deviation by the Bank as required by the OCC Operating Agreement, Article IV (6);

(g) Submission of a written evaluation to the OCC of the Bank's performance against the Strategic Plan as required by the OCC Operating Agreement, Article IV (8);

(h) Your efforts to submit a written Capital Plan for the Bank as required by the OCC Operating Agreement, Article IV (9), and copies and/or current drafts of the Capital Plan;

(i) Submission to the ADC of any proposed appointment of an individual to a "senior executive officer" position as defined in 12 C.F.R. § 5.51(c)(4) as required by the OCC Operating Agreement, Article V (1);

(j) Your efforts to ensure that the Bank maintains a qualified Bank Secrecy Act Officer ("BSA Officer") as required by the OCC Operating Agreement, Article VI(1) and (2);

(k) Copies of the BSA's Officer's reporting to the Board regarding the status of the Banks's BSA/AML program as required by the OCC Operating Agreement, Article VI (1);

(l) Your efforts to ensure that the Bank has sufficient staff needed to support the BSA Officer as required by the OCC Operating Agreement, Article VI (3);

COLE, SCOTT & KISSANE, P.A.

(m) The Board's review of the adequacy of the Bank's BSA Officer and the written determination on its findings as required by the OCC Operating Agreement, Article VI (4);

(n) Your efforts to adopt the BSA/AML Internal Control Program as required by the OCC Operating Agreement, Article VII (1) and (2);

(o) Your efforts to adopt a written Customer Due Diligence Program ("CDD Program") as required by the OCC Operating Agreement, Article VIII (1) and (2);

(p) Your efforts to adopt a written Suspicious Activity Monitoring and Reporting Program ("Suspicious Activity Review Program") as required by the OCC Operating Agreement, Article IX (1) and (2); and

(q) Your efforts to adopt a written BSA/AML Independent Testing Program ("BSA/AML Audit Program") as required by the OCC Operating Agreement, Article X (1) and (2).

Defendants objected to the above production request for seeking non-public information related to OCC and FRB regulatory investigation, compliance, and supervision as protected under the GLBA, BSA, AML, SAR, and the CFR. Attached hereto as **Exhibit 1**.

During March, Plaintiff's counsel sought to confer on Defendants' objection to Request for Production No. 5. In good faith, and complying with federal authority, counsel for Defendants maintained his client's discovery objections. See email communications attached hereto as **Exhibit 2.** Specifically, counsel for Defendants stated (1) Defendants could not produce non-public documents

involving OCC communications as a protected disclosure absent Court order, and (2) the federal agency OCC rather than the Bank, was in a position to determine the public nature of any OCC documentation that may be produced in this litigation.

Plaintiff's counsel is aware that OCC documents such as the ones sought in Request for Production No. 5  are subject to strict privacy standards under federal law. In fact, counsel for Plaintiff previously contacted the OCC with a similar request to those in Request for Production No. 5, an inquiry that the OCC denied for reasons including relevance, privacy, and public interest concerns. Attached hereto as **Exhibit 3.** Notwithstanding, Plaintiff rejected Defendants' discovery objection  rooted in substantially similar reasons as the OCC's denial to the same information. Counsel for Defendants, acting under federal authority, instructed Plaintiff's counsel that based on previous representations, a motion to compel was the best option. See **Exhibit 2 p**. __. On March 31, 2026, Plaintiff filed a Motion to Compel responsive documents to Request for Production No. 5, and requested this Court overrule related discovery objections to OCC documentation.

Since conferral of the parties, counsel of record has been in contact with the OCC regarding documents subject to Request for Production No. 5. See **Exhibit 2**. Counsel for the Defendants and the OCC in good faith have jointly agreed to

review documents subject to Request for Production No. 5 in a privileged log, and will be producing all non-privileged documents identified by the OCC. To facilitate this process, the OCC requested a hold of the motion practice in light of good faith efforts to identify and obtain non-privileged documents. **Exhibit 2 p. __**Plaintiff's counsel refused. The Akerman Law Firm,  pressuring an expedited timeline on the OCC—a federal agency with significant public service obligations—flatly rejected good faith requests and demanded immediate production of documents. Without waiving its prior objections, Defendants oppose Plaintiff's Motion to Compel and Plaintiff's Request for Production No. 5, based on the same.

## II.      MEMORANDUM OF LAW :

Disclosure of OCC information is subject to various federal regulations and laws that impose rather severe penalties for failure to comply. Defendants, and by nature, its counsel of record, are obligated to adhere with the following federal regulation:

> **12 CFR § 4.37 Persons and entities with access to OCC information; prohibition on dissemination**.
>
> (b)Non-OCC employees or entities —
>
> (1) Generally.
>
> (i) Without OCC approval, no person, national bank, Federal savings association, or other entity, including one in lawful possession of

non-public OCC information under paragraph (b)(2) of this section, may disclose information covered by this subpart in any manner, except:

(A) After the requester has sought the information from the OCC pursuant to the procedures set forth in this subpart; and

(B) As ordered by a Federal court in a judicial proceeding in which the OCC has had the opportunity to appear and oppose discovery.

(ii) Any person who discloses or uses non-public OCC information except as expressly permitted by the Comptroller of the Currency or as ordered by a Federal court, under paragraph (b)(1)(i) of this section, may be subject to the penalties provided in 18 U.S.C. 641.

In other words, Defendants, as non-OCC employees or entities cannot as a matter of federal law, share non-public information following a requester's inquiry with the OCC, and absent a <u>Court Order</u>[1] in a proceeding to which the OCC had an opportunity to appear and oppose. As stated previously, Plaintiff requested from the OCC substantially similar information in Request for Production No. 5 which was denied by the federal agency as an improper inquiry into non-public information among several reasons. See **Exhibit 3**. Thus, absent the OCC's opportunity to appear and Court order, Defendants cannot by operation of law disclose the non-public information sought by Plaintiff. And to be clear,

---

[1] Plaintiff cites to caselaw that support scenarios where the OCC was given an opportunity to appear and object to discovery, and a court order required production, a distinctly different scenario from the present – where the OCC has neither appeared/ intervened as a party nor has been obligated by Court order.

Defendants' 12 CFR § 4.37 non-disclosure obligations are not merely perfunctory and without consequence. The federal regulation contemplates specific penalties in 18 U.S.C. 641, which may include "fine[s] under this title, or imprison[ment] not more than ten years, or both  . . . ." Contrary to Plaintiff's assertions, Defendants are not engaged in a blanket invocation of a vague privilege, but rather reflect a legitimate concern to prevent the commission of criminal violations as set forth in the above federal law.[2]  Moreover, nowhere in Plaintiff's Request for Production No. 5 does the discovery sought explicitly limit production to non-public information, presenting serious legal exposure to Defendants if complied with absent Court order.

Defendants' understandably cautious approach to discovery given the non-public nature of documents, involvement of federal agencies, and potential criminal penalties for inadvertent non-compliance with federal law, are echoed in their objections to Request for Production No. 5.

Notwithstanding, the parties have made collective efforts to contact the OCC, and an agreement has been made between Defendants and the OCC to

---

[2] In this litigation, the OCC sent a communication to Defendants regarding the production of board minutes protected under 12 CFR § 4.37(b), which formed the basis for sealing certain produced records to which the Court is aware of in Motion to redact (Dkt. 40) filed on 4/2/2026.

COLE, SCOTT & KISSANE, P.A.

identify non-privileged information that may be produced. See attached privileged log. Defendants' actions, particularly in light of severe statutory consequences, demonstrates a good faith attempt to resolve discovery issues without the need for motion practice.

WHEREFORE, for the reasons stated herein, Defendants request this honorable Court to deny Plaintiff's Motion to Compel Discovery Request for Production No. 5 and sustain any objections contained in Defendants' Response to Request for Production No.5, and any other relief deemed just and proper.

Case No. 8:25-cv-02996-SDM-CPT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of April, 2026, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

COLE, SCOTT & KISSANE, P.A.

Counsel for Defendants, FLORIDA BANCSHARES, INC., FIRST NATIONAL BANK OF PASCO. ANDER PLATT GIBBS, JOHN HENSON, PAUL MIDILI, ERNEST PEEPLES, MARLENE MANN, STEVEN CARLE, AND PAULA S. O'NEIL
500 N. Westshore Boulevard, Suite 700
Tampa, Florida 33609
Telephone 813-560-2810
Facsimile 813-286-2900
Primary e-mail:
daniel.nicholas@csklegal.com
Secondary e-mail:
roxanne.cohen@csklegal.com

By:  */s/ Daniel A. Nicholas*
      DANIEL A. NICHOLAS
      Florida Bar No.: 0847755