UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEF TRADING, LLC,

Plaintiff,

v. No. 8:25-cv-02996-SDM-CPT

FLORIDA BANCSHARES, INC. and
FIRST NATIONAL BANK OF PASCO, et al.,

Defendants.
_______________________________________/

**UNOPPOSED MOTION OF THE OFFICE OF THE COMPTROLLER OF THE CURRENCY FOR LEAVE TO FILE AN AMICUS CURIAE BRIEF IN SUPPORT OF NEITHER PARTY**

Non-Party the Office of the Comptroller of the Currency ("OCC" or "Agency"), an independent bureau of the U.S. Department of the Treasury, respectfully requests leave to file the accompanying amicus curiae brief in support of neither party regarding Plaintiff's motion to compel production of documents, filed on March 31, 2026, concerning Plaintiff's Request for Production No. 5.

While both the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Middle District of Florida lack any provision regarding amicus curiae briefs, the Eleventh Circuit has recognized that "district courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings." *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249 n.34

(11th Cir. 2006) (citing cases). The Agency's interest is to assist the Court in this case by providing expertise on the national banking system and the OCC's administrative disclosure process and bank examination privilege.

**LOCAL RULE 3.01(g) CERTIFICATION**

In compliance with Local Rule 3.01(g), the Agency certifies that it has conferred with counsel for each party in a good faith effort to resolve the issues raised herein. Further, neither party opposes the Agency's motion for leave to file an amicus curiae brief.

Respectfully submitted,

Brian Hudak
Deputy Chief Counsel
brian.hudak@occ.treas.gov

Peter C. Koch
Director for Litigation
peter.koch@occ.treas.gov

Jason E. Friedman
Assistant Director for Litigation
jason.friedman@occ.treas.gov

/s/ Derick Fong
Derick Fong
Attorney
derick.fong@occ.treas.gov
Office of the Comptroller of the Currency
U.S. Department of the Treasury
400 Seventh St, SW
Washington, DC 20219

*On behalf of the Agency*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEF TRADING, LLC,

Plaintiff,

v. No. 8:25-cv-02996-SDM-CPT

FLORIDA BANCSHARES, INC. and
FIRST NATIONAL BANK OF PASCO, et al.,

Defendants.
________________________________________/

**AMICUS CURIAE BRIEF OF THE OFFICE OF THE COMPTROLLER OF THE CURRENCY IN SUPPORT OF NEITHER PARTY**

Amicus curiae, the Office of the Comptroller of the Currency ("OCC" or "Agency"), is the primary federal regulator of national banks, including Defendant the First National Bank of Pasco, and is charged with assuring their safety and soundness and compliance with laws and regulations. *See* 12 U.S.C. § 1 and 481.

**BACKGROUND**

On September 18, 2025, the OCC issued a Formal Agreement[1] to the First National Bank of Pasco based on unsafe or unsound practices, including those

[1] A Formal Agreement is an enforcement action that is enforceable by the OCC under 12 U.S.C. § 1818. *See* 12 U.S.C. §§ 1818(b), 1818(e), 1818(i)(2); OCC PPM 5310-3, Bank Enforcement Actions and Related Matters (May 25, 2023), *available at* https://www.occ.gov/news-issuances/bulletins/2023/ppm-5310-3.pdf; *see also McCrea v. Truist Bank*, Civ. A. No. 25-13112,

relating to Bank Secrecy Act and anti-money laundering risk management and suspicious activity reporting, and violations of law, rule, or regulation, including 12 C.F.R. § 21.11 (suspicious activity reports) and 31 C.F.R. § 1010.610 (due diligence programs for correspondent accounts for foreign financial institutions). *See* Agreement, No. AA-SO-2025-46 (Sept. 18, 2025), *available at* https://www.occ.gov/static/enforcement-actions/eaAA-SO-2025-46.pdf. The Formal Agreement requires the First National Bank of Pasco and its Board of Directors to take action to correct the unsafe or unsound practices and violations identified by the OCC, to submit requests to the OCC for "supervisory non-objection" for certain actions, and to provide reports and other submissions to the OCC.

On March 31, 2026, Plaintiff filed a motion to compel production of documents regarding Plaintiff's Request for Production No. 5 (the "Request"). Plaintiff's Request seeks documents and information from Defendants related to their compliance with the Formal Agreement. *See* Mot. to Compel at 4-5. Defendants have objected to the Request in part because it seeks non-public OCC information, *see* Mot. to Compel at 5-6, which is protected by the OCC's bank

2025 WL 3900300, at *2 (D.S.C. Nov. 5, 2025), *R. & R. adopted*, 2026 WL 45019 (D.S.C. Jan. 7, 2026) (Section 1818 "did not create a private right of action.").

examination privilege. *Raffa v. Wachovia Corp*, 242 F. Supp. 2d 1223, 1225 (M.D. Fla. 2002).

**LEGAL STANDARD**

Non-public OCC information is information the OCC is not required to release under the Freedom of Information Act, 5 U.S.C. § 552, or that the OCC has not yet published or made available pursuant to 12 U.S.C. § 1818(u), such as supervisory correspondence. 12 C.F.R. § 4.32(b). Non-public OCC information may not be disclosed by anyone in lawful possession of such information "except after that person has sought and obtained permission from the OCC or as ordered by a federal court." *Raffa*, 242 F. Supp. 2d at 1225; *see also* 12 C.F.R. §§ 4.36(b), 4.37(b)(1)(ii). "The bank examination privilege is a qualified privilege that accords agency opinions and recommendations and banks' responses thereto protection from disclosure." *In re SunTrust Banks, Inc. ERISA Litig.*, Civ. A. No. 08-3384, 2017 WL 11634376, at *1 (N.D. Ga. Oct. 4, 2017); *see In re Bankers Tr. Co.*, 61 F.3d 465, 471 (6th Cir. 1995) ("The primary purpose of the privilege is to preserve candor in communications between bankers and examiners, which those parties consider essential to the effective supervision of banking institutions."). Non-public OCC information, even if in a third party's possession or incorporated into their records, is considered the OCC's property, *see* 12 C.F.R. § 4.32(b), and the privilege that

attaches to such information "belongs to the OCC." *Raffa*, 242 F. Supp. 2d at 1225 (citing *First E. Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C. Cir. 1994)).

**DISCUSSION**

Based on the language of the Request, it appears to the OCC that documents responsive to the Request in the Defendants' possession could include documents containing non-public OCC information subject to the OCC's bank examination privilege, such as Defendants' requests, reports, or other submissions to the Agency related to their compliance with the Formal Agreement. There may also be non-privileged documents responsive to the Request or responsive information subject to other privileges or restrictions on dissemination.[2]

Because Defendants have neither produced a log of withheld materials to Plaintiff nor have otherwise identified for the OCC the documents responsive to the Request that may contain non-public OCC information subject to the bank examination privilege, the OCC is not yet in a position to make an informed decision regarding whether to intervene to assert its privilege over such information or allow its disclosure. Further, neither party has requested that the

[2] Defendants have also objected to the Request on other bases including the Bank Secrecy Act, *see* Mot. to Compel at 5-6, which, along with its implementing regulations provide that suspicious activity reports "are confidential and subject to an 'unqualified discovery and evidentiary privilege that courts have held cannot be waived.'" *Wiand v. Wells Fargo Bank, N.A.*, 981 F. Supp. 2d 1214, 1216–17 (M.D. Fla. 2013) (citation omitted); *see also* 12 C.F.R. § 21.11(k); 31 C.F.R. § 1020.320(e).

Agency authorize Defendants to disclose any specific non-public OCC information in documents responsive to the Request through the administrative process set forth in 12 C.F.R. part 4, subpart C, which must occur before the court determines whether documents responsive to the Request are discoverable.[3] *See Stevens v. Flagstar Bank, N.A.*, Civ. A. No. 24-0094, 2025 WL 374942, at *4 (S.D. Miss. Feb. 3, 2025) ("Plaintiffs may not move to compel the production of any 'non-public information' belonging to the OCC without first contacting the agency and following its procedures for obtaining that information."). Indeed, "[a] determination of discoverability is premature pending a determination by the OCC whether they will release the information through the established administrative process." *Raffa*, 242 F. Supp. 2d at 1225.

* * *

The OCC has been in contact with both parties in an attempt to facilitate the OCC's review of the documents in dispute and avoid unnecessary motions practice. While ultimately unsuccessful, Defendants' counsel indicated a willingness to produce a log of documents responsive to the Request withheld

---

[3] Plaintiff previously filed with the OCC an administrative request for disclosure on November 14, 2025 (*see* Ex. A), which the Agency denied on December 1, 2025 (*see* Ex. B). That initial request, however, was very broad in nature and sought supervisory materials from the OCC directly rather than bank books and records from Defendants. The OCC stands ready to consider any refined and tailored request to approve Defendants' disclosure notwithstanding its prior denial of Plaintiff's prior request.

from production (*see* Exs. C, D). The log would allow both the Plaintiff and the OCC to better understand which responsive documents Defendants identified as containing non-public OCC information subject to the bank examination privilege and thereafter allow the Plaintiff to file the required administrative request to the OCC seeking disclosure.

**CONCLUSION**

For these reasons, the OCC respectfully recommends that the Court hold in abeyance the motion to compel until: (1) Defendants have logged the documents responsive to the Request that contain non-public OCC information subject to the bank examination privilege; (2) a party requests the OCC's authorization to release such documents through the administrative procedures set forth in 12 C.F.R. part 4, subpart C; and (3) the OCC renders a decision on that request.[4] *See Raffa*, 242 F. Supp. 2d at 1225.

[4] Should the OCC decide to authorize the release of any non-public OCC information, "[t]he OCC may condition [its] decision to release [such] information on entry of a protective order by the court" that appropriately protects the information's confidentiality. 12 C.F.R. § 4.38

Respectfully submitted,

Brian Hudak
Deputy Chief Counsel
brian.hudak@occ.treas.gov

Peter C. Koch
Director for Litigation
peter.koch@occ.treas.gov

Jason E. Friedman
Assistant Director for Litigation
jason.friedman@occ.treas.gov

/s/ Derick Fong
Derick Fong
Attorney
derick.fong@occ.treas.gov
Office of the Comptroller of the Currency
U.S. Department of the Treasury
400 Seventh St, SW
Washington, DC 20219

*On behalf of the Agency*